# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

DIAMOND GLASS, INC., *et al.*,[1]

               Debtors.

)
)
)
)
)
)
)
)
)

Chapter 11

Case No. 08-10601 (CSS)

(Joint Administration Requested)

**Ref. Docket No.: 28, 144, 187, 207, 208, 274, 290**

## ORDER PURSUANT TO 11 U.S.C. §§ 105(A), 363, AND 365 AND FEDERAL BANKRUPTCY RULES 2002, 6004, 6006, AND 9014, (A) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF ASSETS OF DEBTORS OUTSIDE THE ORDINARY COURSE OF BUSINESS (B) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (C) AUTHORIZING THE ASSUMPTION AND SALE AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASES; AND (D) GRANTING RELATED RELIEF

This matter having come before this Court on the *Motion For Entry Of An Order*

*Pursuant To 11 U.S.C §§ 105(A), 363 And 365 And Federal Bankruptcy Rules 2002, 6004, 6006,*

*And 9014, (A) Approving Asset Purchase Agreement And Authorizing The Sale Of Assets Of*

*Debtors Outside The Ordinary Course Of Business; (B) Authorizing The Sale Of Assets Free And*

*Clear Of All Liens, Claims, Interests And Encumbrances; (C) Authorizing The Assumption And*

*Sale And Assignment Of Certain Executory Contracts And Unexpired Leases; And (D) Granting*

*Related Relief* (the "Sale Motion", Docket No. 28)[2] filed on April 1, 2008 by Diamond Glass,

---

[1]   The Debtors in these proceedings are: Diamond Glass, Inc. (Tax ID No. XX-XXX8853); and DT Subsidiary Corp., a wholly owned subsidiary of Diamond Glass (Tax ID No. XX-XXX3494), each with a mailing address of 220 Division Street, Kingston, PA 18704. Diamond Glass, Inc. is formerly known as Diamond Glass Companies, Inc. and Diamond Triumph Auto Glass, Inc.

[2]   All capitalized terms not defined herein shall be given the meaning ascribed to them in the Agreement, the Sale Motion, or the Bid Procedures Order (as defined below), as appropriate.

                                                

Inc. ("Diamond"), and DT Subsidiary Corporation ("DT Subsidiary", and, together with Diamond, the "Debtors").

In the Sale Motion, Debtors request that the Court enter an order, among other things, (A) approving that certain Asset Purchase Agreement (the "APA") entered into or to be entered into by and between the Debtors and Diamond Glass Acquisition, LLC, or its assignee(s) or designee(s); (B) approving the sale (the "Sale") of substantially all of the Debtors' assets (the "Assets") outside the ordinary course of business and free and clear of the Encumbrances other than the Permitted Encumbrances (the "Excluded Encumbrances"), and subject to higher or better bids; (C) authorizing and approving the assumption and assignment of certain executory contracts and unexpired leases; and (D) granting related relief.

On April 24, 2008 this Court entered an order (the "Bid Procedures Order", Docket No. 187) authorizing Debtors to conduct the Auction and establishing a date for the Auction, and approving, among other things, (i) the terms and conditions of the bid procedures set forth in the Bid Procedures Order (the "Bid Procedures"), (ii) the use of the Bid Procedures in connection with the Auction; (iii) the form and manner of notice of the Bid Procedures; and (iv) procedures relating to certain Designated Contracts, including notice of proposed cure amounts.

On May 23, 2008 this Court entered a consensual order (the "Extension Order", Docket No. 274) extending certain deadlines contained in the Bid Procedures Order including the date of the Auction and the Sale Hearing.

The Court having jurisdiction to consider the Sale Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(b)(2) and 1334; and consideration of the Sale Motion, the relief requested therein, and the responses thereto, if any, being a core proceeding in accordance with 28 U.S.C. § 157(b); and the appearance of all interested parties and all responses and

2

objections, if any, to the Sale Motion having been duly noted in the record of the Sale Hearing; and upon the record of the Sale Hearing, and all other pleadings and proceedings in this case, including the Sale Motion; and it appearing that notice of the Sale Motion and of the Bid Procedures are sufficient under the circumstances, and that no further notice is required; and it appearing that the relief requested in the Sale Motion is in the best interests of Debtors, their estates and creditors, and all other parties-in-interest thereof; and after due deliberation and sufficient cause appearing therefore;

IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:[3]

A.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.     The Court has jurisdiction over this matter and over the property of Debtors, including the Assets to be sold, transferred, or conveyed pursuant to the Asset Purchase Agreement (the "Agreement"), dated as of June 19, 2008, by and between Debtors, and their estates pursuant to 28 U.S.C. §§ 157 and 1334, and Belron U.S. Inc. (the "Purchaser"). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue for this chapter 11 case and the Sale Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     The statutory predicates for the relief sought in the Sale Motion and the basis for the approvals and authorizations herein are (i) sections 105(a), 363, and 365 of the Bankruptcy Code and (ii) Bankruptcy Rules 2002, 6004, 6006, and 9014.

---

[3]     All findings of fact and conclusions of law announced by the Court at the Sale Hearing and related to the Sale Motion are hereby incorporated herein to the extent not inconsistent herewith.

3

D.    On April 1, 2008 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have continued in possession and management of their business and property as a debtor-in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

E.    As evidenced by the proofs of service and publication filed with the Court, proper, timely, adequate, and sufficient notice of the Sale Motion, the Auction, and the Sale Hearing have been provided in accordance with sections 102(1) and 363(b), Bankruptcy Rules 2002, 6004, 6006, 9006, 9007, 9008, and 9014, the local rules of this Court, the procedural due-process requirements of the United States Constitution, and in compliance with the Bid Procedures Order. The Debtors also provided due and proper notice of the assumption, sale, and assignment of each executory contract and the unexpired leases to be assigned to Purchaser pursuant to the Agreement (the "Designated Contracts") to each non-debtor party under each such Designated Contract. Such notice was good and sufficient and appropriate under the particular circumstances. No other or further notice of the Sale Motion, the Auction, the Sale Hearing, the assumption and assignment of the Designated Contracts (including with respect to the payment by the Debtors of any cure amount due thereunder), or of the entry of this Order is necessary or shall be required other than with respect to the procedures for assumption and assignment of Real Property Leases.

F.    A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities, including, without limitation, (i) all entities that claim any interest in or lien on the Assets; (ii) all parties to Designated Contracts assumed and sold and assigned pursuant to this Order; (iii) all governmental taxing authorities that have, or as a result of the sale of the Assets may have, claims, contingent or otherwise, against the

Debtors; (iv) all parties that filed requests for notices under Bankruptcy Rule 9010(b) or who were entitled to notice under Bankruptcy Rule 2002; (v) all creditors (whether liquidated, contingent or unmatured) of the Debtors; (vi) all interested governmental, pension, and environmental entities; (vii) the Office of the United States Trustee; and (viii) all entities that have, within the past 12 months, expressed to the Debtors an interest in purchasing the Assets. Other parties interested in bidding on the Assets were provided, upon request, sufficient information to make an informed judgment on whether to bid on the Assets in accordance with the Bid Procedures Order and Bid Procedures.

G.     The Assets are property of the Debtors' estates and title thereto is vested in the Debtors' estates.

H.     The Debtors have demonstrated a sufficient basis and the existence of exigent circumstances requiring them to enter into the Agreement, sell the Assets and assume and assign the Designated Contracts under sections 105(a), 363, and 365 of the Bankruptcy Code, and such actions are appropriate exercises of the Debtors' business judgment and in the best interests of the Debtors, their estates and the creditors thereof. There can be no assurance that the value of the Assets would be maintained if any undue delay in consummation of the transactions contemplated in the Sale Motion and Agreement were to occur. There can be no assurance that the Purchaser would be willing to complete such transactions if delay in the consummation of the transactions were to occur.

I.     The Bid Procedures set forth in the Bid Procedures Order were non-collusive, substantively and procedurally fair to all parties, were the result of arm's-length negotiations and were reasonable and appropriate in the context of these cases.

DB02:6909977.4                                                                    066831.1001

J.     The Debtors and their professionals have complied, in good faith, in all respects with the Bid Procedures Order. As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, through marketing efforts and a competitive sale process conducted in accordance with the Bid Procedures Order, the Debtors (a) afforded interested potential purchasers a full, fair, and reasonable opportunity to qualify as bidders and submit their highest and/or otherwise best offer to purchase the Assets, (b) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Assets, (c) considered any bids submitted on or before the Bid Deadline or any extension granted in accordance with the Bid Procedures Order, and (d) commenced the Auction on June 19, 2008.

K.     At the conclusion of the Auction, the Debtors announced that they had determined that the offer submitted by the Purchaser in the Agreement was the highest and/or otherwise best offer, and the Purchaser is the Successful Bidder for the Assets in accordance with the Bid Procedures Order. The Purchaser submitted the highest and/or otherwise best offer, and the Purchaser is the Successful Bidder for the Assets in accordance with the Bid Procedures Order. The Bid Procedures therefore obtained the highest value for the Assets for the Debtors and their estates.

L.     The offer of the Purchaser, on the terms and conditions set forth in the Agreement, including the form and total consideration to be realized by the Debtors pursuant to the Agreement, (i) is the highest and/or best offer received by the Debtors; (ii) is fair and reasonable; (iii) is in the best interests of the Debtors' estates and the creditors thereof; (iv) constitutes full and adequate consideration and reasonably equivalent value for the Assets;

6

and (v) will provide a greater recovery for the Debtors' creditors and other interested parties than would be provided by any other practically available alternative.

M.      The Purchaser is a buyer in good faith, as that term is used in the Bankruptcy Code and the decisions thereunder. The Agreement was negotiated and entered into in good faith, based on arm's-length bargaining, and without collusion or fraud of any kind. The Auction was conducted in accordance with the Bid Procedures Order and in good faith within the meaning of section 363(m) of the Bankruptcy Code. Based on the record before the Court, neither the Debtors nor the Purchaser has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or cause the application of or implicate section 363(n) of the Bankruptcy Code to the Agreement or to the consummation of the sale transaction and transfer of the Assets and Designated Contracts to the Purchaser. The Purchaser is therefore entitled to all the protections and immunities of section 363(m) of the Bankruptcy Code, including with respect to all of the Assets.

N.      The Debtors have full power and authority to execute the Agreement and all other documents contemplated thereby, and the sale of the Assets as contemplated by Agreement has been authorized and approved by the Debtors. Other than as may be expressly provided for in the Agreement, no consents or approvals are required by the Debtors to consummate such transactions.

O.      The Debtors have advanced sound business reasons for seeking to enter into the Agreement and to sell and/or assume and assign the Assets, as more fully set forth in the Sale Motion and as demonstrated at the Sale Hearing, and it is a reasonable exercise of the Debtors' business judgment to sell the Assets and to consummate the transactions contemplated by the Agreement. Notwithstanding any requirement for approval or consent by any person, the

transfer of the Assets to the Purchaser and the assumption and assignment of the Designated Contracts is a legal, valid, and effective transfer of the Debtors' right, title and interest in the Assets and any Designated Contracts upon the Closing.

P.     The terms and conditions of the Agreement, including the consideration to be realized by the Debtors pursuant to the Agreement, are fair and reasonable, and the transactions contemplated by the Agreement are in the best interests of the Debtors' estates.

Q.     Except as otherwise provided in the Agreement, the Assets shall be sold free and clear of all Encumbrances with Encumbrances to attach to the net proceeds to be received by the Debtors in the same priority and subject to the same defenses and avoidability, if any, as before the Closing (as defined in the Agreement), and the Purchaser would not enter into the Agreement to purchase the Assets otherwise; provided, however, that no Encumbrances shall attach to payments made by the Purchaser, in accordance with the Agreement, to satisfy (i) any payments to be made to NatCity pursuant to section 2.3(b)(i) of the Agreement (the "Investment Banking Fee"), or (ii) any payments made by the Purchaser pursuant to section 2.3(b)(iii) and (iv) of the Agreement (the "Wind Down Expenses").

R.     The transfer of the Assets to the Purchaser will be a legal, valid, and effective transfer of the Assets, and, except as may otherwise be provided in the Agreement, shall vest the Purchaser with all right, title, and interest of the Debtors to the Assets free and clear of any and all Encumbrances. Except for the Assumed Liabilities as specifically provided in the Agreement or this Order, the Purchaser shall not assume or become liable for any Encumbrances relating to the Assets being sold by the Debtors.

S.     The transfer of the Assets to the Purchaser free and clear of all Excluded Encumbrances will not result in any undue burden or prejudice to holders of any Excluded

8

Encumbrances as all such Excluded Encumbrances of any kind or nature whatsoever shall attach to the net proceeds of the sale of the Assets received by the Debtors in the order of their priority, with the same validity, force, and effect that they now have as against the Assets and subject to any claims and defenses the Debtors or other parties may possess with respect thereto. All persons having Excluded Encumbrances of any kind or nature whatsoever against or in the Debtors or the Assets shall be forever barred, estopped and permanently enjoined from pursuing or asserting such Excluded Encumbrances against the Purchaser, any of its assets, property, successors or assigns, or the Assets.

T.  The Debtors may sell the Assets free and clear of all Excluded Encumbrances of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f) of the Bankruptcy Code has been satisfied. Those (i) holders of Excluded Encumbrances and (ii) non-debtor parties, who did not object, or who withdrew their objections, to the sale of the Assets and the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Excluded Encumbrances who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Excluded Encumbrances, if any, attach to the net proceeds of the sale of the Assets ultimately attributable to the property against or in which they claim or may claim any Excluded Encumbrances, with such Excluded Encumbrances being subject to treatment as prescribed in the Plan filed by the Debtors or by separate order of this Court; provided, however, that no Excluded Encumbrances shall attach to payments made by the Purchaser, in accordance with the Agreement, to satisfy the Wind-Down Expenses and Investment Banking Fee. All objections to the Sale Motion have been resolved or withdrawn or overruled.

9

U. Not selling the Assets free and clear of all Excluded Encumbrances would adversely impact the Debtors' estates, and the sale of Assets other than one free and clear of all Excluded Encumbrances would be of substantially less value to the Debtors' estates.

V. The Debtors and the Purchaser have, to the extent necessary, satisfied the requirements of section 365 of the Bankruptcy Code, including sections 365(b)(1)(A), (B) and 365(f) of the Bankruptcy Code, in connection with the sale and the assumption and assignment of the Designated Contracts. The Purchaser has demonstrated adequate assurance of future performance with respect to the Designated Contracts pursuant to section 365(b)(1)(C) of the Bankruptcy Code. The assumption and assignment of the Designated Contracts pursuant to the terms of this Order is integral to the Agreement and is in the best interests of the Debtors, their estates, creditors and other parties-in-interest thereof, and represents the exercise of sound and prudent business judgment by the Debtors.

W. The Designated Contracts are assignable notwithstanding any provisions contained therein to the contrary. The Debtors have provided for the cures and/or other payments or actions required to assume and assign the Designated Contracts to the Purchaser. The Purchaser has provided adequate assurance of its future performance under the Designated Contracts.

X. The Purchaser will be acting in good faith, pursuant to section 363(m) of the Bankruptcy Code, in closing the transactions contemplated by the Agreement at any time on or after the entry of this Order and cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004 and 6006.

Y. The transactions contemplated under the Agreement do not amount to a consolidation, merger, or *de facto* merger of the Purchaser and the Debtors and/or the Debtors'

10

estates, there is not substantial continuity between the Purchaser and the Debtors, there is no continuity of enterprise between the Debtors and the Purchaser, the Purchaser is not a mere continuation of the Debtors or their estates, and the Purchaser does not constitute a successor to the Debtors or their estates.

Z.    The sale of the Assets outside of a plan of reorganization pursuant to the Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors. The sale does not constitute *a sub rosa* chapter 11 plan.

AA.    The Agreement is a valid and proper offer and "Qualified Bid" pursuant to the Bid Procedures Order and sections 363(b) and 363(k) of the Bankruptcy Code.

BB.    The total consideration provided under the Agreement by the Purchaser for the Assets is the highest and/or best offer received by the Debtors, and the Purchase Price constitutes (a) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act and (c) reasonably equivalent value, fair consideration, and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia, for the Assets.

CC.    Time is of the essence in consummating the sale. To maximize the value of the Assets, it is essential that the sale of the Assets occur within the time constraints set forth in the Agreement. Accordingly, there is cause to lift the 10-day stay imposed by Bankruptcy Rules 6004 and 6006.

DD.    Other than the Assumed Liabilities and its obligations under the Agreement, the Purchaser shall have no obligation with respect to any liability of the Debtors.

11

NOW, THEREFORE, BASED ON ALL OF THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.    The relief requested in the Sale Motion is granted, pursuant to 11 U.S.C. §§ 105(a), 363, and 365, in its entirety, subject to the terms and conditions contained in this Order.

2.    All objections and responses to the Sale Motion are resolved in accordance with the terms of this Order and as set forth in the record of the Sale Hearing. If any such objection or response was not otherwise withdrawn, waived, or settled, it, and all reservations of rights contained therein, is overruled and denied.

3.    Notice of the Sale Hearing was fair and equitable under the circumstances and complied in all respects with 11 U.S.C. § 102(1) and Bankruptcy Rules 2002, 6004 and 6006.

*Approval of Sale*

4.    The sale of the Assets, the terms and conditions of the Agreement (including all schedules and exhibits affixed thereto), and the transactions contemplated thereby are approved in all respects.

5.    The sale of the Assets, and the consideration provided by the Purchaser under the Agreement, is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

6.    The Purchaser is hereby granted and is entitled to all of the protections provided to a good-faith Purchaser under section 363(m) of the Bankruptcy Code, including with respect to the transfer of the Designated Contracts as part of the sale of the Assets pursuant to section 365 of the Bankruptcy Code and this Order; accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale of Assets shall not affect the validity

12

of the sale of Assets to Purchaser (including with respect to the transfer of the Designated Contracts as part of the sale of Assets pursuant to section 365 of the Bankruptcy Code and this Order), unless such authorization is duly stayed pending such appeal.

7.     The Debtors are authorized and directed to fully assume, perform under, consummate, and implement the terms of the Agreement together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Agreement and this Order and sale of the Assets contemplated thereby including, without limitation, deeds, assignments, stock powers, and other instruments of transfer, and to take all further actions as may reasonably be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser, or reducing to possession any or all of the Assets or Assumed Liabilities, as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Agreement, without any further corporate action or orders of this Court. The parties shall have no obligation to proceed with the Closing of the Agreement until all conditions precedent to their respective obligations to do so have been met, satisfied or waived.

8.     The Debtors and each other person or entity having duties or responsibilities under the Agreement, any agreements related thereto or this Order, and their respective directors, officers, employees, members, agents, representatives, and attorneys, are authorized and empowered, subject to the terms and conditions contained in the Agreement, to carry out all of the provisions of the Agreement and any related agreements; to issue, execute, deliver, file, and record, as appropriate, the documents evidencing and consummating the Agreement, and any related agreements; to take any and all actions contemplated by the Agreement, any related agreements or this Order; and to issue, execute, deliver, file, and record, as appropriate, such

13

other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments,

leases, or other agreements or documents and to perform such other acts and execute and deliver

such other documents, as are consistent with, and necessary or appropriate to implement,

effectuate, and consummate, the Agreement, any related agreements and this Order and the

transactions contemplated thereby and hereby, all without further notice to any person,

application to, or order of, the Court or further action by their respective directors, officers,

employees, members, agents, representatives, and attorneys, and with like effect as if such

actions had been taken by unanimous action of the respective directors, officers, employees,

members, agents, representatives, and attorneys of such entities. The officers, directors, or any

other authorized representative of the Debtors are authorized to certify or attest to any of the

foregoing actions (but no such certification or attestation shall be required to make any such

action valid, binding, and enforceable). The Debtors are further authorized and empowered to

cause to be filed with the secretary of state of any state or other applicable officials of any

applicable governmental units any and all certificates, agreements, or amendments necessary or

appropriate to effectuate the transactions contemplated by the Agreement, any related

agreements and this Order, including amended and restated limited-liability-company

agreements, certificates or articles of incorporation and by-laws or certificates or articles of

amendment, and all such other actions, filings, or recordings as may be required under

appropriate provisions of the applicable laws of all applicable governmental units or as any

officer of the Debtors may determine are necessary or appropriate. The execution of any such

document or the taking of any such action is deemed conclusive evidence of the authority of such

person to so act. Without limiting the generality of the foregoing, this Order shall constitute all

approvals and consents, if any, required by the corporation laws of the state of Delaware and all

14

other applicable business corporation, trust, and other laws of the applicable governmental units with respect to the implementation and consummation of the Agreement, any related agreements and this Order, and the transactions contemplated thereby and hereby.

9.　　Effective as of the Closing, (a) the sale of the Assets by the Debtors to the Purchaser shall constitute a legal, valid, and effective transfer of the Debtors' right, title and interest in the Assets notwithstanding any requirement for approval or consent by any person and shall vest the Purchaser with all right, title, and interest of the Debtors in and to the Assets, free and clear of all Excluded Encumbrances of any kind, pursuant to sections 363(f) and (b) of the Bankruptcy Code, and (b) the assumption of any Assumed Liabilities by the Purchaser shall constitute a legal, valid and effective delegation of any Assumed Liabilities to the Purchaser and shall divest the Debtors of all liability with respect to any Assumed Liabilities.

10.　　The sale of the Assets is not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code.

### Transfer of Assets

11.　　Except to the extent specifically provided in the Agreement, upon the closing of the sale pursuant to the Agreement, the Debtors are authorized, empowered, and directed, pursuant to sections 105(a), 363(b), and 365 of the Bankruptcy Code, to sell the Assets, including those within the Assignment and Assumption Agreement, to the Purchaser. The sale of the Assets shall vest the Purchaser with all right, title, and interest of the Debtors to the Assets free and clear of any and all Excluded Encumbrances and other liabilities and claims, whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, disputed or undisputed, or known or unknown, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity, or

15

otherwise, with all such Excluded Encumbrances to attach only to the proceeds of the sale (if any) with the same priority, validity, force, and effect, if any, as they now have in or against the Assets, subject to all claims and defenses the Debtors may possess with respect thereto; provided, however, that no Excluded Encumbrance shall attach to payments made by the Purchaser, in accordance with the Agreement, to satisfy the Wind-Down Expenses and Investment Banking Fee. Following the date of such closing, no holder of any Excluded Encumbrances in the Assets shall interfere with the Purchaser's use and enjoyment of the Assets based on or related to such Excluded Encumbrances, or any actions that the Debtors may take in their chapter 11 cases and no person shall take any action to prevent, interfere with, or otherwise enjoin consummation of the transactions contemplated in or by the Agreement or this Order.

12. The provisions of this Order authorizing the sale of the Assets free and clear of Excluded Encumbrances, other than Assumed Liabilities, shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Order. However, the Debtors and the Purchaser, and each of their respective officers, employees, and agents, are authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtors or the Purchaser deem necessary or appropriate to implement and effectuate the terms of the Agreement and this Sale Order. Moreover, effective as of the Closing Date, the Purchaser, its successors and assigns, shall be designated and appointed the Debtors' true and lawful attorney and attorneys, with full power of substitution, in the Debtors' name and stead, on behalf and for the benefit of the Purchaser, its successors and assigns, to demand and receive any and all of the Assets and to give receipts and releases for and in respect of the Assets, or any part thereof, and from time to time

16

to institute and prosecute in the Debtors' name, for the benefit of the Purchaser, its successors and assigns, any and all proceedings at law, in equity or otherwise, that the Purchaser, its successors and assigns, may deem proper for the collection or reduction to possession of any of the Assets, and to do all acts and things with respect to the Assets that the Purchaser, its successors and assigns, shall deem desirable. The foregoing powers are coupled with an interest and are irrevocable by the Debtors.

13. If any person or entity, which has filed statements or other documents or agreements evidencing Excluded Encumbrances on or in the Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of Excluded Encumbrances, and any other documents necessary for the purpose of documenting the release of all Excluded Encumbrances which the person or entity has or may assert with respect to the Assets, the Debtors and Purchasers are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Assets.

14. To the greatest extent available under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been and are directed to be transferred to the Purchaser as of the Closing Date.

15. All of the Debtors' rights, title and interests in the Assets to be acquired by the Purchaser under the Agreement shall be, as of the Closing Date, or at such other time as specified pursuant to the terms of the Agreement, and upon the occurrence of the Closing, or at

17

such other time as specified pursuant to the terms of the Agreement, transferred to and vested in the Purchaser. Upon the occurrence of the Closing, or at such other time as specified pursuant to the terms of the Agreement, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Assets acquired by the Purchaser under the Agreement and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Assets to the Purchaser.

16.     Except for the Assumed Liabilities as expressly provided in the Agreement, the Purchaser is not assuming nor shall it or any affiliate of the Purchaser be in any way liable or responsible, as a successor or otherwise, for any liabilities, debts, or obligations of the Debtors in any way whatsoever relating to or arising from the Debtors' ownership or use of the Assets prior to the consummation of the transactions contemplated by the Agreement, or any liabilities calculable by reference to the Debtors or their operations or the Assets, or relating to continuing or other conditions existing on or prior to consummation of the transactions contemplated by the Agreement. Except for the Assumed Liabilities, all of the Debtors' liabilities, debts, and obligations arising prior to the Closing Date are extinguished insofar as they may give rise to liability, successor, vicarious or otherwise, against the Purchaser or any affiliate of the Purchaser and their respective officers, directors and advisors.

17.     Except as otherwise provided in the Agreement, on the Closing Date, each creditor of the Debtors is authorized to execute such documents and take all other actions as may be necessary to release its Excluded Encumbrances in and against the Assets, if any, as may have been recorded or may otherwise exist.

18.     Except as otherwise expressly provided in the Agreement, all persons or entities, presently or on or after the Closing Date, in possession of some or all of the Assets are directed

18

to surrender possession of the Assets to the Purchaser on the Closing Date or at such time thereafter as the Purchaser may request.

## Designated Contracts and Real Property Leases

19.     The Assignment and Assumption Agreement is valid and binding, in full force and effect, and enforceable in accordance with its terms.

20.     Subject to the terms of the Agreement, the Assignment and Assumption Agreement and the occurrence of the Closing Date, the assumption by the Debtors of the Designated Contracts and the sale and assignment of such agreements to the Purchaser, as provided for or contemplated by the Agreement, is authorized and approved pursuant to sections 363, 365, 1123(a)(5)(D) and 1141(c) of the Bankruptcy Code.

21.     The procedures (the "Lease Procedures") set forth in § 7.6 of the Agreement, for the assumption and assignment of Real Property Leases, as defined in the Agreement, and the form of sublease agreement attached as an exhibit to the Agreement, are hereby approved and the Debtors are hereby authorized and directed to exercise the renewal options as set forth in the Agreement. Upon the designation by Purchaser of a Real Property Lease or any Seller Contracts related to such Leases as a Designated Contract in accordance with the Lease Procedures, such Real Property Lease and Seller Contract shall be deemed to be a Designated Contract for all purposes under this Order. After the Debtors receive written notice of such designation, the Debtors shall file promptly a motion seeking approval of the assumption and assignment of such Real Property Lease or any Seller Contracts related to such Leases. In addition to the foregoing, the Debtors shall use commercially reasonable efforts to obtain an order of the Bankruptcy Court extending their time to assume or reject Real Property Leases and Seller Contracts through October 28, 2008.

19

22. The Designated Contracts shall be deemed valid and binding and in full force and effect and assumed by the Debtors and sold and assigned to the Purchaser at the Closing, or at such other time as specified pursuant to the terms of the Agreement, pursuant to sections 363 and 365 of the Bankruptcy Code, subject only to (a) the payment of all cures and/or other payments or actions required to assume and assign the Designated Contracts to the Purchaser; and (b) the Purchaser's right to exclude Designated Contracts from the definition of Designated Contracts in accordance with the terms of the Agreement. The Purchaser shall be liable for all obligations under such assumed and assigned Designated Contracts arising on and after the Closing Date, or at such other time as specified pursuant to the terms of the Agreement.

23. Upon the Closing, or at such other time as specified pursuant to the terms of the Agreement, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested the Debtors' right, title and interest of each Designated Contract. The Debtors shall cooperate with, and take all actions reasonably requested by, the Purchaser to effectuate the foregoing.

24. Pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code, and except as otherwise provided in this Order, the Debtors shall promptly pay or cause to be paid to the parties to any Designated Contracts the requisite Cure Amounts, if any, set forth in the notice served by the Debtors on each of the parties to the Designated Contracts, except to the extent that a cure amount was amended on the record of the Sale Hearing (the "Cure Amounts"), following the assumption and assignment thereof. The Cure Amounts are fixed at the amounts set forth in the notice served by the Debtors, or the amounts set forth on the record of the Sale Hearing, as the case may be, and the non-debtor parties to the Designated Contracts are forever bound by such Cure Amounts.

25.     All defaults or other obligations under the Designated Contracts that are being assumed and assigned to the Purchaser arising prior to the Closing, or at such other time as specified pursuant to the terms of the Agreement, (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured by payment of the Cure Amounts.

26.     Any provision in any Designated Contract that purports to declare a breach, default, or payment right as a result of a sublet, assignment or a change of control in respect of the Debtors is unenforceable and is hereby nullified with respect to the sale transaction and procedures for delayed assumption of real property leases set forth in the Agreement and assignments authorized by this Order, and all Designated Contracts shall remain in full force and effect, subject only to payment of the appropriate Cure Amounts, if any. No sections or provisions of any Designated Contract that purport to provide for additional payments, penalties, charges, or other financial accommodations in favor of the non-debtor third party to the Designated Contracts or restrict use of the premises which are demised by a Designated Contract to a specific named tenant, business or use shall have any force and effect with respect to the sale transaction and assignments authorized by this Order, and such provisions constitute unenforceable anti-assignment provisions under section 365(f) and/or are otherwise unenforceable under section 365(e) of the Bankruptcy Code and no assignment of any Designated Contract pursuant to the terms of the Agreement shall in any respect constitute a default under any Designated Contract. The non-Debtors party to each Designated Contract shall be deemed to have consented to such assignment under section 365(c)(1)(B) of the Bankruptcy Code, and the Purchaser shall enjoy all of the rights and benefits under each such Designated

21

Contract as of the applicable date of assumption without the necessity of obtaining such non-Debtors party's written consent to the assumption or assignment thereof.

27. Purchaser, its successors and assigns, shall have the express right to exercise any and all unexercised extension options, renewal options, and/or non-disturbance rights or protections, notwithstanding any language in the Designated Contracts making the exercise of such rights personal to any party or limiting the exercise of such rights only to an assignee who is an affiliate of the original named party under such Designated Contract or an entity that acquires all or substantially all of the assets of the original named party to such Designated Contract. Purchaser shall exercise said rights consistent with the terms of any such Designated Contract.

28. The Purchaser has satisfied all requirements under sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code to provide adequate assurance of future performance under the Designated Contracts. The Purchaser shall be responsible for all post-Closing liabilities and obligations under the Designated Contracts.

29. The Debtors and their estates shall be relieved of any liability for any breach of any of the Designated Contracts occurring from and after Closing, pursuant to and in accordance with section 365(k) of the Bankruptcy Code.

*Additional Provisions*

30. The Purchaser has not assumed or is otherwise not obligated for any of the Debtors' liabilities other than the Assumed Liabilities as set forth in the Agreement, and the Purchaser has not purchased any of the Excluded Assets. Consequently, all persons, Governmental Units (as defined in sections 101(27) and 101(41) of the Bankruptcy Code) and all holders of Encumbrances based on or arising out of liabilities retained by the Debtors are hereby enjoined from taking any action against the Purchaser (or its affiliates) or the Assets to recover any Encumbrances or on account of any liabilities of the Debtors other than Assumed Liabilities

pursuant to the Agreement. All persons holding or asserting any Encumbrances in the Excluded Assets are hereby enjoined from asserting or prosecuting such Encumbrances or cause of action against the Purchaser or the Assets for any liability associated with the Excluded Assets.

31.    The Purchaser is not a "successor" to the Debtors or their estates by reason of any theory of law or equity, and the Purchaser shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of the Debtors and/or their estates including, without limitation, any bulk-sales law, successor or vicarious liability or similar liability except as otherwise expressly provided in the Agreement. Except to the extent the Purchaser assumes the Assumed Liabilities pursuant to the Agreement, neither the purchase of the Assets by the Purchaser or its affiliates or designees, nor the fact that the Purchaser or its affiliates or its designees are using any of the Assets previously operated by the Debtors, will cause the Purchaser or any of its affiliates or designees to be deemed a successor in any respect to the Debtors' business within the meaning of any foreign, federal, state, or local revenue, pension, ERISA, tax, labor, employment, environmental, or other law, rule, or regulation (including without limitation filing requirements under any such laws, rules or regulations), or under any products-liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine, or under any product-warranty liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine. Except to the extent expressly included in the Assumed Liabilities, the Purchaser and its affiliates shall have no liability or obligation under the WARN Act (29 U.S.C. §§ 210 *et seq.*) or the Comprehensive Environmental Response Compensation and Liability Act, or any foreign, federal, state, or local labor, employment, or environmental law by virtue of the Purchaser's purchase of the Assets or assumption of the Assumed Liabilities.

23

32. Except to the extent expressly included in the Assumed Liabilities, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all persons and entities, including, without limitation, the Debtors, all debt security holders, equity security holders, the Debtors' employees or former employees, governmental, tax, and regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding any Excluded Encumbrance, of any kind or nature whatsoever against, in or with respect to the Debtors or the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtors, the Assets, the operation of the Debtors' business prior to the Closing Date or the transfer of the Assets to the Purchaser, shall be forever barred, estopped, and permanently enjoined from asserting, prosecuting or otherwise pursuing such Excluded Encumbrance against the Purchaser or any affiliate, successor or assign thereof and each of their respective current and former members, officers, directors, managed funds, investment advisors, attorneys, employees, partners, affiliates and representatives (each of the foregoing in its individual capacity), or the Assets. To avoid doubt, the foregoing shall not prevent the Debtors, their estates, successors, or permitted assigns from pursuing claims, if any, against the Purchaser and/or its successors and assigns in accordance with the terms of the Agreement.

33. Subject to the terms of the Agreement, the Agreement and any related agreements may be waived, modified, amended, or supplemented by agreement of the Debtors and the Purchaser, without further action or order of the Court; provided, however, that any such waiver, modification, amendment, or supplement is not material and substantially conforms to, and effectuates the Agreement and any related agreements.

24

34.     The failure to specifically include any particular provision of the Agreement or any related agreements in this Order shall not diminish or impair the effectiveness of such provision. It is the intent of the Court, the Debtors and the Purchaser that the Agreement and any agreement related thereto are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order prior to Closing.

35.     No bulk-sale law or any similar law of any state or other jurisdiction shall apply in any way to the sale and the transactions contemplated by the Agreement.

36.     To the extent any provisions of this Order conflict with the terms and conditions of the Agreement, this Order shall govern and control.

37.     Nothing in this Order shall alter or amend the Agreement and the obligations of the Debtors and the Purchaser thereunder.

38.     This Order and Agreement shall be binding on and govern the acts of all persons and entities, including without limitation, the Debtors and the Purchaser, their respective successors and permitted assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a chapter 7 case if this case is converted from chapter 11, all creditors of the Debtors (whether known or unknown), filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Assets.

39.     The provisions of this Order are non-severable and mutually dependent.

40.     Nothing in any order of this Court or contained in any plan of reorganization or liquidation confirmed in the chapter 11 case, or in any subsequent or converted case of the

DB02:6909977.4                                                                      066831.1001

Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the Agreement or the terms of this Order.

41.     Notwithstanding Bankruptcy Rules 6004, 6006, 7062, and 9021, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Purchaser are free to close under the Agreement at any time, subject to the terms of the Agreement. In the absence of any person or entity obtaining a stay pending appeal, if the Debtors and the Purchaser close under the Agreement, the Purchaser shall be deemed to be acting in "good faith" and shall be entitled to the protections of section 363(m) of the Bankruptcy Code as to all aspects of the transactions under and pursuant to the Agreement if this Order or any authorization contained herein is reversed or modified on appeal.

42.     The automatic stay under section 362(a) of the Bankruptcy Code shall not apply to and otherwise shall not prevent the exercise or performance by any party of its rights or obligations under the Agreement.

43.     To the extent permitted by Section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit relating to the operation of the Assets sold, transferred or conveyed to Purchaser on account of the filing or pendency of these Chapter 11 cases or the consummation of the Sale.

44.     Each and every  federal, state and local government agency or department is authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

45.     This Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Order, the Bid Procedures Order, the Agreement in all respects and to decide any disputes

concerning this Order, the Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Agreement and this Order including, without limitation, the interpretation of the terms, conditions, and provisions hereof and thereof, the status, nature, and extent of the Assets and any Designated Contracts and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Excluded Encumbrances. To the extent there are any inconsistencies between the terms of this Order and the Agreement, the terms of this Order shall control.

46.     Notwithstanding anything to the contrary in this Order, any assignee of the Motor Vehicle Fleet Open-End Operating Lease Agreement No. 2241, dated April 22, 2002, as amended by the Lease Security Amendment dated May 30, 2002 (collectively, the "Vehicle Lease"), referenced in the *Limited Objection And Reservation Of Rights Of D. L. Peterson Trust With Respect To Debtor's Motion For Entry Of Order Approving Assumption And Assignment Of Certain Contracts, And Notice Of Proposed Cure Amounts* [Docket No. 288] (the "Limited Objection") filed by D. L. Peterson Trust ("DLPT"), shall be responsible for all obligations of the lessee under the Vehicle Lease including, without limitation, any tort or similar claims asserted by third parties or claims asserted by any taxing authorities, regardless whether such obligations relate to any period of time or portion of any period of time occurring prior to assignment of the Vehicle Lease as authorized by this Order. In connection with the foregoing, DLPT hereby represents that, other than as set forth in the Limited Objection, it is not, as of the date of this Order, aware of any such third party claim or any tax claim, and that there are currently no amounts due and owing under the Vehicle Lease.

47.     Nothing in this Order or the Agreement (including but not limited to paragraph 2.4(b)(iv) thereof) releases, nullifies, precludes, or enjoins the enforcement of any liability to a

27

federal governmental unit of the United States under police and regulatory statutes or regulations against any entity as the operator of property (it being understood that none of the Assets is real estate owned and therefore owner liability is not applicable) after the date of entry of this Order; provided, however, that the Purchaser and its successors, subsidiaries, affiliates, agents and assigns shall have no liability whatsoever to any governmental units or entity or third-party, including any liability for investigation, remediation, monitoring or natural resource damages, (i) arising out of or relating to the generation, transport, or arranging for transport, recycling, handling, treatment, storage, disposal or release of wastes, substances or materials to or at any third-party location prior to the Closing Date or (ii) for any fines or penalties for any days, prior to the Closing Date, of a violation of or non-compliance with environmental, health or safety laws by the Debtors, their predecessors, subsidiaries, affiliates or agents or with respect to the Assets purchased pursuant to the Agreement. Nothing in this Order is, or shall be deemed or construed to be, an admission of liability by the Debtors under either of the immediately foregoing subclauses (i) and (ii) of this paragraph.

48. Notwithstanding section 363(**o**) of the Bankruptcy Code, if, pursuant to the transactions contemplated hereby, the Purchaser purchases any interest in a consumer credit transaction that is subject to the Truth in Lending Act or any interest in a consumer credit contract (as defined in section 433.1 of title 16 of the Code of Federal Regulations (January 1, 2004), as amended from time to time), then the Purchaser shall remain subject to all claims and defenses that are related to such consumer credit transaction or such consumer credit contract, to the same extent as the Purchaser would be subject to such claims and defenses of the consumer had such interest been purchased at a sale not under section 363 of the Bankruptcy Code.

28

49.     Pursuant to their bid, Newport/Levine Acquisition, LLC ("NLA LLC") is the backup bidder to the Purchaser's successful bid to acquire the Assets pursuant to the Agreement, and NLA LLC shall be obligated to close on and be bound by the terms of their backup bid if the Debtors and the Purchaser shall fail to close on the sale of the Assets by the outside date set forth in the Agreement. In such event, the Debtors and NLA LLC will submit to the Court a further order authorizing the Debtors to consummate and close the sale with NLA LLC pursuant to the terms of the backup bid and subject to all the terms and conditions thereof.

Dated: June 2O, 2008
       Wilmington, Delaware

_____
Christopher S. Sontchi
United States Bankruptcy Judge

DB02:6909977.4                                066831.1001